| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, COLORADO<br><br>201 La Porte Ave, Suite 100<br>Ft. Collins, CO 80521 | DATE FILED: October 16, 2023 5:30 PM<br>FILING ID: 4243BDF8A0A2B<br>CASE NUMBER: 2023CV30125 |
| **Plaintiff and Counter-Defendant:** CARLSON FARMS HOMEOWNERS ASSOCIATION, a Colorado non-profit corporation,<br>v.<br><br>**Defendant and Counter-Claimant:** NOCO REAL ESTATE SOLUTIONS, INC., d/b/a POUDRE PROPERTY SERVICES, f/k/a RCE, INC., d/b/a RCE, INC., a Colorado corporation; SANDRA OLDENBURG, an individual; and JOHN BICKERTON, an individual<br><br>**Third-Party Plaintiff:** NOCO REAL ESTATE SOLUTIONS, INC., d/b/a POUDRE PROPERTY SERVICES, A Colorado corporation and SANDRA OLDENBURG, an individual.<br><br>v.<br><br>**Third-Party Defendants:** MATTHEW BAILEY, KIM GIGNAC AND SHAUNE GOLEMON. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff*:<br>Miro Kovacevic, #35981<br>Richard L. Merpi II, #51896<br>Robert S. Hunger, #53089<br>Goodspeed Merrill<br>9605 S. Kingston Court, Suite 200<br>Englewood, CO  80112<br>Phone: (720) 473-7644<br>Email: mk@goodspeedmerrill.com<br>       rmerpi@goodspeedmerrill.com<br>       rhunger@goodspeedmerrill.com | Case NO. 23 CV 30125<br><br>Div. 4C |

## FIRST AMENDED COMPLAINT

1

EXHIBIT 1 TO MOTION FOR LEAVE

Plaintiff, Carlson Farms Homeowners Association ("Carlson Farms"), through its undersigned counsel, Goodspeed Merrill, states as follows:

## PARTIES AND VENUE

1. Plaintiff Carlson Farms Homeowners Association, Inc. is a Colorado nonprofit corporation which has its principal office address in Larimer County, Colorado.

2. Defendant NOCO Real Estate Solutions, Inc., d/b/a Poudre Property Services ("PPS") is a Colorado corporation in good standing with its principal place of business located at 2900 S. College Ave., Suite 3E, Fort Collins, CO 80525.

3. NOCO Real Estate Solutions was previously known as RCE, Inc. The name change was reflected in a November 13, 2019 filing with the Colorado Secretary of State. NOCO Real Estate Solutions also employs RCE Inc. as a trade name.

4. Defendant Sandra Oldenburg is an individual who resides at 4904 Silverwood Drive, Johnstown, Colorado 80534.

5. Defendant John Bickerton is an individual who resides in Larimer County, Colorado. (PPS, Ms. Oldenburg, and Mr. Bickerton are collectively referred to herein as "Defendants").

6. Venue and jurisdiction are proper in this Court pursuant to C.R.C.P. 98(c) because Defendants Oldenburg and Bickerton reside in Larimer County, Colorado. Further, PPS' principal place of business is located in Larimer County, Colorado.

## GENERAL ALLEGATIONS

7. Carlson Farms is the Homeowners Association affiliated with a residential community located in Johnstown, Colorado. This Complaint concerns the improper conduct and

2



EXHIBIT

1 to Pl's Motion For Leave to File First Amended Complaint

inferior record keeping of its longtime Property Manager, and describes how hundreds of thousands of dollars in Association funds are missing without explanation.

8. This action seeks to compensate the Association for the damages it sustained as a result of the Defendants' conduct and compel specific performance for financial documentation and records owed to the Association.

### The Homeowners Association Management Agreement

9. In 2007, the Association engaged PPS as its Agent and Property Manager. For all time periods relevant to this Complaint, Defendants Oldenburg and Bickerton served as the principal and controlling figures behind PPS.

10. On January 1, 2007, the parties executed a Homeowners Association Management Agreement ("the Agreement") **(Exhibit 1).**

11. Defendant Bickerton executed the Agreement on behalf of PPS.

12. The Agreement describes PPS' extensive obligations as Agent with respect to the Association's finances. These duties included, but were not limited to:

> **§2.1 Collection of Assessments.** Agent shall collect (and give receipts for, if necessary) all annual and other assessments and monies that are due the Association with respect to the Property …
>
> **§2.2 Records of Income and Expenditures.** Agent shall maintain records of all income and expenses relating to the Property, and shall submit to the Association on or before the twentieth (20th) day of the following month, a statement of receipts and disbursements for the preceding month, including a statement of the balance in the operating account for the Property.
>
> **§2.3 Preparation of Annual Budget.** Sixty (60) days prior to the Fall Association General Meeting, Agent shall prepare and submit to the Board a recommended Annual Budget for the next year showing anticipated income and expenses for the next year.
>
> **§2.4 Submission of Annual Report.** Within forty-five (45) days after the end of each fiscal year, Agent shall submit to the Association, a summary of all receipts and

disbursements relating to the Property for the preceding year. HOWEVER, submission of such annual report shall not be construed to require Agent to supply an audit. Any audit required by the Association shall be prepared at the Association's expense by an auditor(s) of its choosing.

…

**§2.6 Employment of Personnel.** Agent shall hire, pay, negotiate collective bargaining agreements with (if necessary), supervise, and discharge whatever personnel may be required to maintain and operate the Property on behalf of the Association and in accordance with the budget, job standards and wage rates previously approved by the Association …

**§2.7 Payment of Employment Taxes.** Agent shall, on behalf of the Association, execute and file all tax and other returns and do and perform all acts required of the Association as an employer under the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, all applicable federal, state and local income tax laws, and all other laws, regulations, and/or ordinances governing employment and payment of wage. Upon request, the Board shall promptly execute and deliver to the Association all necessary powers of attorney, notices of appointment and the like.

…

**§2.9 Payment of Expenses.** From the funds of the Association, Agent shall pay all expenses of the Property, including taxes, building and backflow inspection fee, water rates and other governmental charges, and all other charges or obligations incurred by the Association or by Agent on behalf of the Association with respect to the maintenance or operation of the Property or pursuant to the terms of this Agreement or pursuant to other authority granted by the Board on behalf of the Association.

**§2.10 Records of Insurance.** Agent shall maintain appropriate records of all insurance coverage for the Property carried by the Association …

Agreement at §§ 2.1-2.10.

13. PPS was precluded from making any "unbudgeted expenditures or include any nonrecurring contractual obligations exceeding five hundred dollars ($500.00) without the proper consent of the Association through the Board." Agreement at §3.

14. In addition, PPS was responsible for the disposition of Association funds, and required to keep the funds of the Association completely separate and apart from its own fund or the funds of "any others." Agreement at §5.1.

15. Further, PPS was responsible for paying "all expenses of operation and management of the Property" from the Association's funds. Agreement at §5.2.

16. Pursuant to the Agreement, PPS was obligated to obtain a bond for the Association's benefit for all employees who handled or were responsible for the safekeeping of the Association's monies. Agreement at §5.4.

17. In the alternative, PPS was required to obtain and maintain fidelity insurance coverage.

18. Upon termination of the Agreement, PPS was required to forward any balance of monies due to the Association and provide a final accounting, reflecting the balance of income and expenses with respect to the Property and "all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Property." Agreement at §5.10.

19. Pursuant to the Agreement, the Association paid PPS for its property management services.

***Defendants Failed to Fulfill their Obligations under the Agreement and
Failed to Account for Missing Funds***

20. On multiple occasions in 2021, Defendants provided written documentation to the Association, confirming that the Association had total cash balances in the approximate amount of $438,136.18 for the twelve month period ending December 9, 2021.

21. The 2021 cash balance amount provided by Defendants were in line with cash balance amounts from earlier years. A 2020 Association Treasurer's report reported the

Association's cash balances as $491,194.00 as of October 2020 and $381,306.00 as of September 2019.

22. Throughout 2022, Defendants failed to provide the Association with a myriad of financially related documents, despite the fact that between February and June 2022, the Association's treasurer repeatedly asked for financial information.

23. No financial statements were provided for the first five months of 2022.

24. After months of delay and excuses, Defendants provided a cash flow statement in June 2022, confirming that the Association's collective cash balance as of December 31, 2021 was $537,902.81.

25. The Association continued to request information and financial statements from Defendants in accordance with their obligations under the Agreement.

26. Defendants ignored these repeated requests.

27. On September 26, 2022, the Association requested a face-to-face meeting with Defendants PPS and Oldenburg. This meeting was scheduled for October 12, 2022.

28. On October 10, 2022, the Association e-mailed Defendants PPS and Oldenburg to confirm the meeting, and to request that on October 12, 2022, they provide financial documentation that included: the Association's insurance information; tax returns for the last five years; and financial data for the past twelve months.

29. Defendants PPS and Oldenburg cancelled the October 12, 2022 meeting on the day of the meeting.

30. The parties rescheduled this meeting for October 27, 2022.

31. Shortly before the October 27, 2022 meeting, Defendants PPS and Oldenburg informed the Association that its reserve accounts were exactly $150,000.00. The Association questioned this number as it was significantly lower than the reserve account numbers provided in earlier financial documents.

32. Defendants PPS and Oldenburg informed the Association that while they did not have immediate answers to the Association's queries concerning the exact amount of money in the reserve accounts, they would look into the issue and provide the Association with the correct data. Defendants failed to provide this information.

33. On October 20, 2022, the Association requested that Defendants PPS and Oldenburg provide it with bank statements for the past three months, and asked whether the Association had more than two bank accounts. The Association requested this information by 5 p.m. on October 26, 2022, the day before the October 27, 2022 meeting.

34. The Defendants failed to inform the Association as to whether it had more than two bank accounts. Further, the Defendants never provided the requested bank statements.

35. On October 27, 2022, the Association met with Defendants PPS and Oldenburg.

36. During the October 27, 2022 meeting, Defendants PPS and Oldenburg offered to prepare full financial information data binders for each board member.

37. In an e-mail sent after the October 27, 2022 meeting, the Association requested Defendants PPS and Oldenburg produce the Associations' budget for 2023, which PPS was contractually obligated to provide.

38. Defendants never provided the financials. Defendants never provided the 2023 budget.

39. On October 28, 2022, the Association issued notice of its termination of the Agreement, effective January 1, 2023.

40. On December 6, 2022, the Association's new property manager e-mailed Defendants PPS and Oldenburg a list of property and funds that needed to be forwarded, as required by the Agreement, including the most recent financial reports, bank statements, year-to-date general ledger, and prior tax returns.

41. On December 27, 2022, Defendants PPS and Oldenburg forwarded to the Association a November, 2022 financial report. This report contained several inaccuracies, and reflects the Association's cash balance having decreased by approximately $400,000.00 from the December 2021 financial statements.

42. In 2022, there were no large expenditures that could have accounted for a reduction of $400,000.00 from Association funds.

43. When questioned by the Association on this incredible disparity, PPS failed to respond and failed to provide any explanation.

44. Had the Association known that its 2022 cash reserves were approximately $400,000.00 less than anticipated, it would have increased member assessments.

45. On December 30, 2022, Defendants PPS and Oldenburg informed the Association that they would provide the Association's financials by January 15, 2023.

46. Defendants did provide the Association with some financials by January 15, 2023, but the documentation contained significant omissions, including 2022 end of year financial information, and detailed income and expense sheets. To date, this information has never been provided.

47. Defendants have issued three checks in the total amount of $130,338.23 to the Association as part of their obligations to return the Association's money upon termination of the Agreement. Two of these checks were from the Association to the Association, and drawn from Association accounts at Independent Financial Bank that were operated by Defendants, and the third was from Civitas Resources, Inc. The Association receives oil and gas royalties from Civitas Resources, Inc.

48. The checks were drawn from the following accounts: 1) $101,056.29 from Independent Financial Account No. 4123709); 2) $24,999.93 from Independent Financial Account No. 4123709; and 3) $4,282.01 from Civitas Resources, Inc.

49. The Independent Financial account number from which Defendants drew the checks for $101,056.29 and $24,999.93 does not match account numbers for Independent Financial bank statements previously provided by the Defendants.

*February 10, 2023 Demand Letter*

50. On February 10, 2023, the Association issued a demand letter to Defendants PPS and Oldenburg, requesting that Defendants provide to the Association all of its funds and specifically listed financial information by 5 p.m. on Monday, February 13, 2023 **(Exhibit 2)**. The requested financial documents included: all taxes and tax returns filed on behalf of the Association from 2007 to 2022; a list of financial institutions and account numbers in which the Association has or has had deposits; all leases involving the Association; all oil and gas royalty statements; monthly financial statements; and monthly cashflow statements.

51. The demand letter warned Defendants that the Association would immediately initiate litigation if Defendants failed to provide the requested documentation by the deadline.

52. The Association received confirmation of the Defendants' receipt of the demand letter.

53. Despite this receipt, the Defendants neither acknowledged nor responded to the demand letter.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Defendant PPS)**

54. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

55. The Agreement is a valid contract that binds both the Association and Defendants, who are Agents of the Association.

56. The Association fulfilled its obligations under the Agreement by paying Defendants for PPS' property management services.

57. The Defendants breached their obligations under the Agreement by failing to maintain records of income and expenditures, and failing to submit monthly financials to the Association. Further, the Defendants breached their obligations under the Agreement by failing to prepare an annual budget for 2023 and failing to maintain appropriate records of Association insurance coverage. Moreover, the Defendants breached their obligations under the Agreement by failing to provide a final accounting and failing to return to the Association specific documents as required by the Agreement.

58. The Association has been damaged as a result of the Defendants' breach.

59. The Association respectfully requests that this Court order specific performance requiring Defendants to return all Association monies and financial documentation requested in the February 10, 2023 demand letter to the Association.

**SECOND CLAIM FOR RELIEF**
(Demand for an Accounting – Defendant PPS)

60. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

61. Financial documentation provided by Defendants to the Association has been incomplete and inconsistent, displaying disparities of approximately $400,000.00 from financial statements provided a year apart.

62. Upon information and belief, the incomplete financial records provided by Defendants do not reflect all income and expenses of the Association.

63. Based on the incomplete financials provided by the Defendants, the Association is unable to determine how much money is in its bank accounts and how much money, if any, is due to the Association from Defendants.

64. The Association respectfully demands a full accounting of Defendants' finances, including all bank statements, sources of income, expenses and all Association financial documents.

**THIRD CLAIM FOR RELIEF**
(Money Had and Received – Defendant PPS)

65. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

66. Defendants charged the Association for their property management services. The Association regularly paid Defendants for their services, despite receiving incomplete, inferior financial documentation in 2022.

67. Further, while serving as Agents of the Association, Defendants received oil and gas royalty checks and other monies paid to the Association.

68. The Defendants have received funds from the Association, which, in equity and good conscience, they ought to pay to the Association in order to prevent unjust enrichment in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**(Conversion – all Defendants)**

69. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

70. The Association possessed cash held in Financial Institutions in the approximate amount of $400,000.00 to $500,000.00, according to financial statements provided by Defendants.

71. The Defendants owned and controlled multiple checking accounts with Independent Financial that were in the name of the Association and held Association funds (the "Accounts").

72. Defendants set up the Accounts in a way that precluded the Association from independently reviewing or accessing the Accounts.

73. Defendants proceeded to make multiple, unauthorized transfers of the Association's funds from the Accounts to themselves individually. These transfers solely benefitted Defendants and not the Association, and were not made for any legitimate purpose under the Agreement or otherwise.

74. Defendants intentionally and substantially interfered with the Association's ownership of its cash by preventing the Association from having access to the funds, refusing to

return the funds after the Association demanded their return, and exceeding the extent and duration of authorized use of the Association's funds.

75. The Association did not consent to this interference.

76. The Association has suffered damages in the amount of the converted funds, which is to be proven at trial, plus costs, interest, and all other relief the Court deems appropriate.

### FIFTH CLAIM FOR RELIEF
### (Civil Theft – all Defendants)

77. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

78. The Association owned and possessed approximately $400,000.00 to $500,000.00 of cash reserves, according to financial statements provided by Defendants.

79. The Defendants knowingly exercised control over and/or took the Association's monies.

80. Specifically, Defendants set up the Accounts in a way that precluded the Association from independently reviewing or accessing the Accounts.

81. Defendants proceeded to make unauthorized transfers of the Association's funds from the Accounts to themselves individually. These transfers solely benefitted Defendants and not the Association, and were not made for any legitimate purpose under the Agreement or otherwise.

82. The Defendants did so with the intent to permanently deprive the Association of the use and benefit of its property.

83. The Association suffered economic loss far in excess of $100,000.00.

13

84. Under C.R.S. § 18-4-405, the Association is entitled to receive three times the amount of its actual damages, plus costs and attorney fees.

## SIXTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – Defendants PPS and Oldenburg)

85. The Association incorporates all preceding paragraphs by reference as if fully set forth herein.

86. PPS and Oldenburg made fraudulent misrepresentations of material facts when they informed the Association that it had approximately half a million dollars in cash reserves in its financial accounts.

87. PPS and Oldenburg made the representations knowing them to be false or with the awareness that they did not know whether the representations were true or false.

88. PPS and Oldenburg made the representations with the intent that the Association would rely on them.

89. The Association reasonably relied on this misrepresentation when it decided to refrain from raising assessments in 2022, believing current cash reserves were plentiful.

90. The Association was justified in relying on the misrepresentation as PPS and Oldenburg were its Agents, Officers and Property Managers.

91. The Association was damaged in excess of $100,000.00 as a result of its reliance on PPS' and Oldenburg's representations.

**WHEREFORE**, Plaintiff Carlson Farms Homeowners Association, Inc. respectfully requests that the Court enter judgment in its favor and against Defendant NOCO Real Estate Solutions, Inc, d/b/a Poudre Property Services, Sandra Oldenburg, and John Bickerton in an amount to be determined at trial for non-economic damages, economic damages, treble damages

for civil theft pursuant to C.R.S. § 18-4-405, together with an award of pre- and post-judgment costs and attorneys' fees, as well as pre- and post-judgment interest, and such other relief that this Court deems just and proper.

Respectfully submitted October 16, 2023.

**GOODSPEED MERRILL**

/s/ Richard L. Merpi II
Miro Kovacevic, #35981
Richard L. Merpi II, #51896
Robert Hunger, #53089
*Attorneys for Plaintiff*

Plaintiff's Address:
P.O. Box 30
Frederick, CO 80530